IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BIAGIO RAVO and ENRICO NICOLO, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| -vs- | ) |
| | )   Civil Action No. 04-617 |
| | ) |
| ETHICON ENDO-SURGERY, INC., a Johnson & | ) |
| Johnson Company, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION
## and
## ORDER OF COURT

Plaintiff Biagio Ravo ("Ravo") is a surgeon residing in Italy.  He holds numerous patents.   Plaintiff Enrico Nicolo ("Nicolo") is also a surgeon and multiple patent holder.  He currently works at the McKeesport Hospital in Pennsylvania.  Ravo and Nicolo combined their efforts to develop a medical device which could be used in colo-rectal surgery. On October 16, 1998, Ravo and Nicolo filed an application for U.S. Patent No. 6,117,148 ("the "148 Patent").  The United States Patent and Trademark Office ("USPTO") issued the '148 Patent on September 12, 2002 with twenty claims.

Defendant Ethicon Endo-Surgery, Inc. ("Ethicon") also holds patents on many devices.  In fact, on November 23, 1998, Ethicon filed three patent applications which appear to use identical drawings and specifications.  Patent No. 6,083,241,

1

issued on July 4, 2000, is entitled "Method of Use of a Circular Stapler for Hemorrhoidal Procedure."   Patent No. 6,102, 271, issued on August 15, 2000, is entitled "Circular Stapler for Hemorrhoidal Surgery."   Finally, Patent No. 6,142,933, issued on November 7, 2000, is entitled "Anascope for Hemorrhoidal Surgery."

Ravo and Nicolo contend that Ethicon's PROXIMATE HCS Hemorrhoidal Circular Stapler infringes the '148 Patent.   More particularly, they contend that Ethicon's device infringes claims 1, 2, 3, 5, 7, 11, 12, 13, 15 and 16 of the '148 Patent.   I held a Markman hearing on July 13, 2005, on the meaning of the disputed terms used in these claims.   The parties have submitted their proposed claims construction.

## A. <u>APPLICABLE LAW</u>

On July 12, 2005, the Federal Circuit Court issued a decision in <u>Phillips v. AWH Corp.</u>, Civ No. 3-1269, 3-1286, 2005 WL 1620331 (Fed. Cir. July 12, 2005) which provides detailed guidance to district courts engaged in claims construction.   The <u>Phillips</u> court reiterated the maxim that "the words of a claim are generally given their ordinary and customary meaning." <u>Phillips</u>, 2005 WL 1620331 at * 5, <u>quoting</u>, <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996).   The "ordinary and customary" meaning of a term or phrase used in a claim, "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." <u>Id.</u>, <u>citing</u>, <u>Innova Pure Water, Inc. v. Safari Water Filtration Systems, Inc.</u>, 381 F.3d 1111, 1116 (Fed. Cir. 2004).   That person of ordinary skill in the relevant art is "deemed to read the claim term not only in the context of the particular claim in which the

disputed term appears, but in the context of the entire patent, including the specification." Id.

Where the meaning of the claim term is not immediately apparent to the court, the court can look for help to "'those sources available to the public that show what a person of skill in the art would have understood the disputed claim language to mean.'" Id. at * 6, quoting, Innova, 381 F.3d at 1116.  Those "sources" include not only the words of the claims, but also the specification. The specification, in particular, is "'always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" Id., at * 7, quoting, Vitronics, 90 F.3d at 1582.  Indeed, "'[t]he best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history.'" Id., quoting, Multiform Dessicants, Inc. v. Medzam Ltd., 133 F.3d 1473, 1478 (Fed. Cir. 1998).  Indeed, the specification may reveal that the patentee acted as his own lexicographer or that the patentee intended to limit the scope of a claim. Id. at * 8 (citations omitted).

Ordinarily, a court's understanding of claim terms also will be influenced by the patent's prosecution history.  "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent," Id. at * 9, citing, Lemelson v. Gen. Mills, Inc., 968 F.2d 1202, 1206 (Fed. Cir. 1992), and "whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Id., citing, Vitronics, 90 F.3d at 1582-83.  Here, the '148 Patent was issued in the first instance.  As such, there is

no meaningful prosecution history.

Finally, the Phillips court confirms that a district court can rely on "extrinsic evidence," which includes expert and inventor testimony, dictionaries and learned treatises. Id. at * 10 (citations omitted).  For instance, a technical dictionary may provide to a court a means "'to better understand the underlying technology' and the way in which one of skill in the art might use the claim terms." Id. at * 10, quoting, Vitronics, 90 F.3d at 1584 n. 6.  "Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meaning of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular technology to those of skill in the art of the invention." Id., citing, Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1325 (Fed. Cir. 2002). Similarly, "expert evidence in the form of expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." Id., citing, Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1308-09 (Fed. Cir. 1999) and Key Pharms. v. Herco Labs. Corp., 161 F.3d 709, 716 (Fed. Cir. 1998).  "However, while extrinsic evidence can shed useful light on the relevant art, we have explained that it is less significant than the intrinsic record in determining the legally operative meaning of claim language." Id., quoting, C.R.

Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004) (internal quotation marks omitted).

## B. DR. MACALUSO AS AN EXPERT

As explained in the Phillips decision, expert testimony can be useful in understanding prior art, technical aspects of the invention and how a person of ordinary skill in the relevant art would interpret various terms. Phillips, 2005 WL 1620331 at * 10.  Ethicon has proffered the report and testimony of Dr. Anthony Macaluso, Jr. as an expert on the '148 Patent.  Ravo and Nicolo argue that Dr. Macaluso is not qualified to serve as an expert in this case.  Because the matter was not briefed in advance of the Markman hearing and because Dr. Macaluso had traveled to testify at the hearing, I permitted him to testify and reserved the issue of the admissibility of his testimony.

After careful consideration, I agree with Ravo and Nicolo and sustain their objection.  Dr. Macaluso appears to be an eminently qualified colo-rectal surgeon. Were the issue before me one concerning the technique, method or procedure for performing colo-rectal surgery, then Dr. Macaluso's testimony would be helpful. Yet the issue before me concerns the construction of a medical device.  Dr. Macaluso does not have an engineering background.  He does not hold any patents for medical devices.   Nor does it appear that he has ever been involved in the development of a medical device.  His expert report was devoid of any discussion of prior art or how the '148 Patent did or did not alter the prior art.  Further, while Dr. Macaluso's report did provide definitions for certain claim terms, it appears that

he simply pulled those definitions from dictionaries.  He offers no context for his definitions.  Certainly he has not explained how terms have particular meanings in the pertinent field.  In short, I do not think that Dr. Macaluso is qualified in the relevant field - medical devices.

In the alternative, even if he is qualified in the relevant field, his testimony is unhelpful as he does not discuss prior art and he does not provide anything more than dictionary definitions for the claim terms.  As such, Ravo's and Nicolo's objections to the admission of Dr. Macaluso's expert report and testimony is sustained.  I will not consider his report and /or testimony in construing the claims.

## C. THE DISPUTED CLAIM TERMS

### 1. THE PREAMBLE

Claims 1, 11 and 15 all contain the same preamble - "[a] surgical intraluminal resection[1] and reconstruction device."  Ethicon contends that the preamble is limiting in nature.  More specifically, Ethicon contends that the preamble means that any infringing device must also be a surgical intraluminal resection and reconstruction device.  Ravo and Nicolo disagree.  They urge that the preamble in Claims 1, 11 and 15 simply states the intended use or purpose of the claimed invention. Ravo and Nicolo urge that "preamble language that discusses benefits or features of the claimed invention, but does not clearly rely on those benefits or features as patentably significant, does not limit the claim scope." Docket No. 22, p. 5, citing, Catalina Mktg. Int'l. v. Coolsavings.com, Inc., 289 F.3d 801, 809 (Fed. Cir. 2002).

---

[1] The term "resection" means "removal."

"'Whether to treat a preamble as a limitation is a determination resolved only on review of the entire[] ... patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim.'" <u>Poly-America, L.P. v. GSE Lining Technology, Inc.</u>, 383 F.3d 1303, 1309 (Fed. Cir. 2004), <u>quoting</u>, <u>Corning Glass Works v. Sumito Elec. U.S.A., Inc.</u>, 868 F.2d 1251, 1257 (Fed. Cir. 1989).  "'No litmus test defines when a preamble limits claim scope.'" <u>Poly-America</u>, 383 F.3d at 1309, <u>quoting</u>, <u>Catalina Mktg.</u>, 289 F.3d at 808.  "On the one hand, a preamble is a claim limitation if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality to the claim.'" <u>Id.</u>, <u>quoting</u>, <u>Pitney Bowes, Inc. v. Hewlett-Packard Co.</u>, 182 F.3d 1298, 1305 (Fed Cir. 1999).  "On the other hand, a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'" <u>Id.</u>, at 1310, <u>quoting</u>, <u>Rowe v. Dror</u>, 112 F.3d 473, 478 (Fed. Cir. 1997).  "'Further, when reciting additional structure or steps underscored as important by the specification, the preamble may operate as a claim limitation.'" <u>Id.</u>, <u>quoting</u>, <u>Catalina Mktg.</u>, 289 F.3d at 808.

After careful consideration of the entire '148 Patent, I find that the preamble is not limiting.  Instead, the phrase "[a] surgical intraluminal resection and reconstruction device" simply states the intended use or purpose of the invention - that the device be used to intussuscept, anastomose and resect lumen. I base this conclusion on the fact that Ravo and Nicolo define a structurally complete invention in the claim body.  Claims 1, 11 and 15 each reference a housing; a means for

attaching the lumen to the device; a means for attaching the intussuscepted portion of the lumen together; and a means for resecting the lumen. The preamble does not add any additional structure or steps. Indeed, the "deletion of the preamble phrase does not affect the structure or steps of the claimed invention." Catalina Mktg., 289 F.3d at 809, citing, IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d 1422, 1434 (Fed. Cir. 2000).

## 2. "Luminal attachment and intussusception means"

Independent claims 1 and 11 include the following language:

> *a luminal attachment and intussusception means* coupled to said housing for attachment and inversion of a portion of the lumen to be removed;

(emphasis added). The parties agree, as do I, that "a luminal attachment and intussusception means" is a means-plus-function limitation recognized by 35 U.S.C. § 112, ¶ 6. Construing means-plus-function claims requires two steps: (1) identifying the claimed function(s); and (2) identifying the corresponding structure identified in the written description which performs that function. See JVW Enterprises, Inc. v. Interact Accessories, Inc., Civ. No. 4-1410, 2005 WL 2416333 at * 5 (Fed. Cir. October 3, 2005) and Omega Engineering Inc. v. Raytek Corp., 334 F.3d 1314, 1321 (Fed. Cir. 2003).

Here, I think that "luminal attachment and intussusception means" involves two functions: (1) attaching the lumen[2]; and (2) intussusception - or inversion - of the

---

[2] The parties agree, as do I, that the term "lumen" means the cavity of a tubular organ. It is not restricted to the bowel.

lumen.  The parties do not appear to disagree over the recited functions.  Instead, the dispute lies in the corresponding structures.   "'In order to qualify as corresponding, the structure must not only perform the claimed function, but the specification must clearly associate the structure with performance of the function." JVW Enterprises, 2005 WL 2416333 at * 6, quoting, Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 269 F.3d 1106, 1113 (Fed. Cir. 2002).

As to the first function - that of attachment, I find that the corresponding structure consists of the annular groove. The specification explains that, with respect to the first embodiment:

> [t]he bowel is <u>attached</u> to the central post 14, such as by tying the bowel portion to the central post <u>at the annular groove</u> with a ligation member 26.

Col. 3, line 66 - Col. 4, line 2 (emphasis added).  Ravo and Nicolo urge that the structure consists of the "central post" and that the reference to the annular groove is simply intended to be an example of where on the central post the lumen could be attached.  At first glance, this argument holds some appeal.  Yet, each of the drawings which correspond to the first embodiment (Figures 1 - 3) shows the lumen attached to the central post at the annular groove.  Accordingly, I read the use of "central post" as Ravo's and Nicolo's short hand reference for "the annular groove located on the central post."  Indeed, the use of the shortened phrase "central post" in the '148 Patent does not occur until after the more thorough definition of the annular groove located on the central post.  Further, if, as Ravo and Nicolo suggest, the annular groove is not the corresponding structure for attachment of the lumen,

it is curious that the '148 Patent teaches that:

> [f]ollowing the mobilization and resection of the mesentary, the surgical tool 10 is positioned into the bowel through the anus such that the <u>annular groove</u> 16 of the central post 14 is aligned midway along the segment of the colon to be resected.

Col. 3, lines 59-66 (emphasis added).  Clearly, the reference to the "annular groove" when positioning the device is vital because the lumen will be attached to the annular groove.

The second embodiment also reveals the lumen being attached at the annular groove:

> [a] surgical tool 50 includes an <u>annular groove</u> 56 around the housing 52 with the <u>annular groove</u> 56 being analogous to the <u>annular groove</u> 16 on the central post 14 of the surgical tool 10 described above.  The <u>annular groove</u> 56 is <u>provided to receive ligation member 26 for attaching the bowel to the surgical tool</u> 50 as will be described hereinafter.
>
> The <u>colon can then be attached</u> to the housing 52 <u>at the annular groove</u> 56 with the ligation member 26, as shown in FIG. 4, <u>substantially in the same manner as discussed above in connection with surgical tool 10</u>.

Col. 5, lines 54-58 and Col. 6, lines 34-37 (emphasis added).  The illustrations also confirm that the lumen is to be attached to the annular groove.  <u>See</u> Figures 4, 5 and 7.[3]  While Ravo and Nicolo argue that the first and second embodiments differ and that only the second embodiment calls for attachment at the annular groove, the

---

[3] I note that, for attachment to be complete, an additional item is required - something external to the device itself.  The '148 Patent teaches that the item could consist of glue or a ligation member.  As the item is not part of the device, though, I do not consider it to be part of the "corresponding structure."

specification itself notes that the attachment in the second embodiment occurs in "substantially the same manner" as in the first embodiment. Consequently, I do not find their argument to be persuasive.[4]

As stated above, the "luminal attachment and intussusception means" references a second function as well - intussusception. The parties agree, as do I, that the term "intussusception" means a telescoping of the lumen, where the lumen is pulled inside itself. Ravo and Nicolo argue that the structure which corresponds to this function consists of the central post and the casing or other rigid member over or around which the lumen is inverted, and the equivalents thereof. See Plaintiffs' Brief, p. 18-19 and Docket No. 22, p. 4-5. Ethicon counters that the annular groove is also involved in intussusception.

As stated above, I have already concluded that the annular groove is part of the device to which the lumen is attached. The phrase at issue is "a luminal attachment and intussusception means." The plain meaning of the use of the conjunctive "and" is that the same structure is used both for attachment and intussusception. Consequently, then, the annular groove is used to accomplish intussusception.

I do, however, agree with Ravo and Nicolo that the '148 Patent uses the term

---

[4] I note that Ravo and Nicolo cite to Col. 7, line 4 of the '148 Patent in support of their contention that the structure corresponding to performing the function of attaching the lumen is the central rod. See Plaintiffs' Brief, p. 18. Yet I read this passage as explaining, not how the lumen is attached for purposes of intussusception, but of how the lumen is gathered in, after intussusception, for purposes of stapling and resection. Indeed, the suture noose is offered as an alternative to the use of the carrier arms, which come into play "[f]ollowing intussusception of the bowel." See Col. 6, line 58.

"central post" to describe the structure which performs the function of intussusception.  Indeed, with respect to the first embodiment, the '148 Patent reads that:

> [f]ollowing ligation of the bowel to the central post 14, the central post 14 is moved relative to the annular housing 20 a distance approximately equal to one-half the length of the bowel to be resected... . With the bowel completely immobilized and attached to the central post 14, this relative movement will cause the intussusception of the segment of the bowel to be removed... .

Col. 4, lines 9-20. Thus, with the understanding that the annular groove is part of the central post which plays a vital role in the attachment of the lumen, I find that the structure which performs the function of intussusception consists of the central post as a whole as well as the casing or other rigid member over or around which the lumen is inverted, and the equivalents thereof.

With respect to the second embodiment, the corresponding structure would involve the annular groove and the stapling assembly, see Col. 6, lines 37-47 (stating that "[f]ollowing the attachment of the colon to the surgical tool 50, the portion of the colon to be resected is intussuscepted by relevant movement of the stapling assembly 61 relative to the annular groove 56 as shown in FIG. 5.  In the surgical tool 50 illustrated in FIG. 5, the stapling assembly 61 is advanced relative to the housing 52 by a threaded connection.   The relevant portion of the bowel will be intussuscepted by a withdrawal of the distal end of the surgical tool 50 corresponding to the advancement of the stapling assembly 61 relative to the annular groove 56 and housing 52."), and the equivalents thereof.

3.  **ATTACH / ATTACHMENT**

Claims 1, 2, 3, 11, 15 and 16 all use the word "attachment" in conjunction with "luminal."   The parties disagree as to how "attachment" or "attach" should be defined.  Ravo and Nicolo urge that attach means "to make fast (as by tying or gluing)." See Plaintiffs' Brief, p. 17. Ethicon, in contrast, contends that "attach" must mean "to make immoveable with respect to." See Docket No. 23-3, ¶ 9.

Having reviewed the '148 Patent in its entirety, I conclude that "attach" means to make fast, as by tying or gluing.   The specification itself provides that:

> [t]he bowel is attached to the central post 14, such as by tying the bowel portion to the central post 14 at the annular groove 16 with a ligation member 26.

See Col. 3, line 66 - Col. 4, line 2 (emphasis added). Thus, the specification itself defines the word.  Further, the specification is consistent with the definition set forth in the dictionary. See Webster's Ninth New Collegiate Dictionary, p. 140.

Further, Ethicon's proposed definition of making something "immoveable" is at odds with the language of the '148 Patent itself.  The Patent reads:

> [w]ith the bowel completely immobilized and attached to the central post 14, this relative movement will cause the intussusception of the segment of the bowel to be removed as shown in FIG. 2.

See Col. 4, lines 17-20 (emphasis added).  Ravo and Nicolo use the conjunctive "and" between "immobilized" and "attached."  A conjunctive word joins elements.  This suggests that the inventors understood "immobilized" and "attached" to mean two different things.

**4.   "PORTION OF THE LUMEN"**

Claims 1, 11, 12 and 15 use the phrase "portion of the lumen" or "lumen portion."  The parties agree that the term "lumen" is universally known to mean "the cavity of a tubular organ."  I agree with Ethicon that "portion of the lumen" means "segment of the lumen."   Indeed, the '148 Patent uses the word "segment" interchangeably with "portion."  For instance, the "Summary of the Invention" reads:

> [t]he surgical device of the present invention includes a main housing adapted to be positioned within the bowel, a mechanism for first intussuscepting a <u>segment</u> of the bowel to be removed, a mechanism for anastomosis of the remaining <u>portions</u> of the bowel prior to the resection and a mechanism for resecting the intussuscepted <u>segment</u> of the bowel to be removed.

<u>See</u> Col. 2, lines 32-38 (emphasis added).

The "Background Information" also uses the word "segment," when discussing resecting, removing, attaching or intussuscepting something:

> [t]he techniques of resecting a <u>segment</u> of the colon ... where a <u>segment</u> of the diseased bowel must be removed... .  The first step is mobilization of the <u>segment</u> to be resected... . Second, resection of the <u>segment</u> to be removed follows the mobilization procedure.  Often in removing the interior <u>segment</u> ... . Following the resection of the <u>segment</u> to be removed, the remaining ends are anastomosed to guarantee the continuity of the intestinal track.

<u>See</u> Col. 1, lines 18-37 (emphasis added).

Further, in discussing the first embodiment of the invention, the drafters use "segment" and "portion" interchangeably:

> [f]ollowing the anastomosis of the bowel sections and the severing of the intussuscepted bowel <u>segment</u>, the

14

> surgical tool 10 can be withdrawn, ... bringing with it the
> resected <u>portion</u> of the bowel.  The resected <u>portion</u> of
> the bowel remains attached to the tool 10 by ligation
> member 26 around central post 14.

<u>See</u> Col. 5, lines 12-17 (emphasis added); <u>see</u> <u>also</u> Col. 3, lines 62-66; Col. 4, lines 18-20

and 24-27.

It is not clear whether Ravo and Nicolo object to defining the term "portion

of the lumen" to mean "segment of the cavity of a tubular organ."  Nowhere in their

two briefs do I see a discussion of the word "segment."  Instead, Ravo and Nicolo

discuss whether the inversion of the intussuscepted lumen requires the inversion

of multiple layers which may make up the entire lumen wall or simply the inversion

of the innermost layer.  To the extent that this is a point in dispute, or is even

relevant to the issue of claims construction - I find the '148 Patent is silent in this

matter.  Further, neither Ravo and Nicolo nor Ethicon offered any admissible expert

testimony on the issue of whether the thickness of the walls of various tubular

organs varies and whether or not it is possible to intussuscept or invert only certain

layers of those walls.  As such, I cannot resolve the issue at this juncture.

**5.  <u>Luminal Attachment Member</u>**

Claim 15 includes the following element:

> [a] luminal attachment member coupled to said housing,
> said luminal attachment member adapted to have a
> lumen portion attached thereto... .

<u>See</u> Claim 15, Col. 8, lines 47-49.  The parties disagree over whether this element is

written in means-plus-function format under 35 U.S.C. §112, ¶ 6.  Ravo and Nicolo

argue against such a construction.  They insist that the word "member" is commonly

used in describing structural elements of mechanical devices. Ethicon counters that the term "member" does not identify a specific structure and that the claim element must necessarily be written in means-plus-function format.

As Ravo and Nicolo point out, the phrase at issue does not include the word "means." Federal Circuit precedent establishes that "a claim term that does not use 'means' will trigger the rebuttable presumption that § 112 ¶ 6 does not apply." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1369 (Fed. Cir. 2002). "The presumption that a limitation lacking the term 'means' is not subject to section 112 ¶ 6 can be overcome if it is demonstrated that 'the claim term fails to 'recite sufficiently definite structure for performing that function.'" Lighting World v. Birchwood Lighting, Inc., 382 F.3d 1354, 1358 (Fed. Cir. 2004), citing, CCS Fitness, 288 F.3d at 1369. However, "the presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome." Lighting World, 382 F.3d at 1358 (citations omitted).

Thus, I begin with the presumption that § 112, ¶ 6 does not apply and consider whether Ethicon has successfully rebutted this presumption. Ethicon simply argues that the claim element recites a function - attaching the lumen - but recites no structure that would perform this function. See Docket No. 18, p. 20 and Docket No. 23, p. 5-7. I find Ethicon's argument to be unpersuasive for several reasons.

First, while I agree that the term "member" does not bring to my mind a particular structure, I must consider Ravo's and Nicolo's argument that persons of ordinary skill in the art would understand "member" to refer to something

16

structural.  Unfortunately, Ravo and Nicolo did not submit any expert testimony on this issue.  Such testimony would have been helpful.  Nevertheless, Federal Circuit precedent teaches that reference may be made to dictionaries. See Lighting World, 382 F.3d at 136-61 (stating "we have looked to the dictionary to determine if a disputed term has achieved recognition as a noun denoting structure... .").  Having consulted several dictionaries, I am convinced that the word "member" would be understood by those skilled in the relevant art to denote structure.  The McGraw Hill Dictionary of Scientific and Technical Terms defines "member" as: "[a] structural unit such as a wall, column, beam or tie, or a combination of any of these... ."  McGraw Hill Dictionary of Scientific and Technical Terms (6th ed.), p. 1308.  Similarly, Webster's Third New International Dictionary defines "member" as "a part of a building or other structure... .[or] an essential part of a framed structure, a machine, or a device." Webster's Third New International Dictionary, p. 1408 (1993).  Thus the luminal attachment member must be structured in such a manner that a lumen may be attached to it.

In addition to the fact that the word "member" is defined in dictionaries as something structural, a review of the entire '148 Patent makes clear that Ravo and Nicolo used the phrase to mean a structure.  For instance, the claim element itself does not describe a function.  Additionally, Ravo and Nicolo use the word "means" elsewhere in the '148 Patent to take advantage of the means-plus-function manner of describing a claim.  It would be odd, indeed, for the drafters to have used the word "means" in Claims 1, 2, 3, 4, 5, 7, 9, 10, 11, 12 and 13 to describe a means-plus-

function element, yet suddenly substitute the word "member" for "means" in Claims 15, 16, 17 and 19.   Additionally, the '148 Patent uses the word "member" in conjunction with several other phrases. See Col. 4, line 61 ("wedge-shaped member"); Col. 5, line 17 ("ligation member"); Col. 6, line 52 ("bowel members."). These phrases connote something structural.

Finally, I agree with Ravo and Nicolo that other prior art patents appear to use the word "member" to refer to structural elements. See Patent No. 4,304,236 entitled "Stapling Instrument Having an Anvil-Carrying Part of Particular Geometric Shape," Col. 19, line 51 and Patent No. 5,355,897, entitled "Method of Performing Pyloroplasty / Pylorectomy Using a Stapler Having a Shield," Col. 10, line 48; both of which are attached to Plaintiffs' Brief in Support of Proposed Interpretations of Claims.

## 6.  "RELATIVE MOVEMENT"

Claim 15 includes the following limitation:

> a stapling assembly moveable relative to said luminal attachment member, wherein relative movement between said stapling assembly and said luminal attachment member operates to invert a portion of the lumen.

See Col. 8, lines 50-54 (emphasis added).  Ethicon argues that this phrase requires that the inversion of the lumen be caused by the relative movement between the stapling assembly member and the luminal attachment member.  Ravo and Nicolo have not offered a contrary definition.  Indeed, their pre-hearing and post-hearing briefs are silent as to this phrase.  Ravo and Nicolo did submit a handout in

conjunction with the Markman hearing.  In that handout, Ravo and Nicolo do not disagree that the phrase at issue requires that the stapling assembly and luminal attachment member are moved relative to one another to cause intussusception. Rather, they argue that because the preamble to Claim 15 uses the word "comprising," the claim is open-ended such that elements in addition to the stapling assembly and the luminal attachment member can be used to cause intussusception.

I think that the parties' proffered constructions are not inconsistent with one another.  In other words, the stapling assembly and the luminal attachment member are moved relative to one another to cause intussusception.  Additional elements can be used to aid in intussusception as well.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BIAGIO RAVO and ENRICO NICOLO,     )
                                                        )
                                                        )
                                                         )
              Plaintiffs,            )
                                                         )
    -vs-                                 )
                                                 Civil Action No.
                                                         )
ETHICON ENDO-SURGERY, INC., a Johnson &amp;   )
Johnson Company,                 )
                                                         )
                                                         )
                                                         )
              Defendant.         )

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **17th** day of November, 2005, after careful consideration, and for the reasons set forth in the accompanying Opinion, I adopt the following Claim Construction:

1. The phrase "a surgical intraluminal resection and reconstruction device" appearing in the preamble of the independent claims is not a claim limitation. Instead, the phrase is designed to convey the intended use or purpose of the invention.

2. The term "lumen," as used throughout the claims means the cavity of a tubular organ.  It is not limited to the bowel.

3. The term "resection" means removal.

4. The phrase "luminal attachment and intussusception means" is a means-plus-function limitation.  The limitation identifies two functions - that of attachment of the lumen and that of intussusception of the lumen.  As for attachment, the annular groove located on the central post is the corresponding structure.   As for intussusception, the annular groove located on the central post, the casing or other rigid member around which the lumen is inverted, and the stapling assembly as well as the equivalents thereof, constitute the corresponding structures.

5. The term "intussusception" means a telescoping of the lumen, or a pulling of the lumen inside itself.

6. The term "attach" means to make fast, such as by tying or gluing.  It does not require immobilization.

7. The phrase "portion of the lumen" means a segment of the cavity of a tubular organ.

8. The phrase "luminal attachment member" is not written in means-plus-function format.  The word "member" is a reference to a structural element.

9. The term "anastomosis" means the surgical connection between the ends of the lumen.

10. The phrase "wherein relative movement between said stapling assembly and said luminal attachment member operates to invert a portion of the lumen"

does require that the relative movement between the stapling assembly and the luminal attachment member cause intussusception.   However, as the claim limitation uses the word "comprising," other elements may aid in intussusception.


BY THE COURT:




_____     /s/  Donetta W. Ambrose

                                    Donetta W. Ambrose,
                                    Chief U. S. District Judge